**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| JAMIE S.,[1] | : | Case No. 3:24-cv-00293 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ORDER**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental

Security Income in October 2022. Plaintiff's claims were denied initially and upon

reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge

(ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a

"disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's

request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. For the reasons set forth below, this Court

AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since May 1, 2020. At that time, she was thirty-seven years old and was considered a "younger person." 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 29-52), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.  FACTS

### A.  The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered the five sequential steps set forth in the Social Security regulations. 20 C.F.R. § 404.1520. The ALJ made the following findings:

Step 1:  Plaintiff has not engaged in substantial gainful activity since May 1, 2020, the alleged onset date.

Step 2:  She has the severe impairments of hypertension, depression, bipolar disorder, borderline personality disorder, and post-traumatic stress disorder (PTSD).

Step 3:  She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of a full range of work at all exertional levels subject to the following nonexertional limitations: "(1) simple, routine tasks; (2) not at a production rate pace and without strict performance quotas; (3) occasional superficial contact with coworkers and supervisors ('superficial contact' is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice); (4) no interaction with the general public; (5) no jobs involving teamwork or tandem tasks; and (6) can tolerate occasional changes to a routine work setting defined as 1-2 per week."

She is unable to perform any of her past relevant work.

Step 5:     Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 7-2 at PageID 35-45.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability. (*Id.* at PageID 45.)

**B.     Treating Psychiatrist Mark MacNealy, D.O., J.D.**

Treating psychiatrist Dr. MacNealy authored two letters in March 2024. (AR, Doc. No. 7-7 at PageID 796; AR, Doc. No. 7-8 at PageID 952.) Although one letter was dated March 7, 2024 and the other was dated March 27, 2024, the letters are otherwise identical. (*Id.*) Dr. MacNealy stated that he had been treating Plaintiff for over two years. (*Id.*) He stated that Plaintiff had the "disabling condition" of PTSD, Chronic, which is an "incurable condition" that "precludes any type of employment until a cure is discovered." (*Id.*) Dr. MacNealy stated that the condition was expected to last more than a year. (*Id.*)

5

Dr. MacNealy completed a Mental Residual Functional Capacity Assessment form in April 2024. (AR, Doc. No. 7-8 at PageID 958-60.) He indicated moderate limitation in the following abilities: remembering locations and work-like procedures; understanding, remembering, and carrying out very short and simple instructions; and making simple, work-related decisions. (*Id.* at PageID 958-59.) He indicated marked limitation in all other areas of mental functioning listed on the form. (*Id.*) Dr. MacNealy explained:

> The patient's ability to meaningfully engage, even for one doctor's appointment, is severely limited by any environmental or internal distraction. Hence, she requires someone be in attendance even during casual social encounters. Typically, this is her mother, who continuously redirects her to the task(s) at hand. This redirection takes time. In general, it results in a doubling [of] the appointment time one would ordinarily expect to spend with her at a routine physician's uncomplicated appointment.
>
> Indeed, it is unlikely the patient is capable of traveling independently, even in familiar territory, to her medical appointments. Her prior ability, as a productive Nurse, is a highly distressful reminder; inasmuch, as she is now totally reliant on her mother for completion of daily activities.
>
> Moreover, and unfortunately, she has shown no improvement over the roughly three (3) years she has been under my care for her disabling mental condition namely:
>
> 1.  Post-Traumatic Stress Disorder PTSD, chronic F43.12
> 2.  The development of Bi-Polar Type I Disorder F41 .9 as a consequence of No 1.
> 3.  Attention Deficient Hyperactivity Disorder ADHD, combined type F90.2 Status-Post
>
> Finally, the key to understanding her disabling condition is based upon evidence suggesting that PTSD can increase one's chances of developing a bipolar disorder. Of particular note is that current research supports the notion that either condition can contribute to the other. This portends an unfavorable medical prognosis.

(*Id.* at PageID 960 (cleaned up).)

6

The ALJ concluded that Dr. MacNealy's opinions in the March 2024 letters were "not persuasive." (Decision, Doc. No. 7-2 at PageID 36.) The ALJ acknowledged that Dr. MacNealy had treated Plaintiff for two years but reasoned that "the record does not show evidence of the type of debilitating symptoms that he … alleges in this opinion evidence." (*Id.*) The ALJ explained: "Such a broad generalized statement regarding [Plaintiff's] inability to work is of little value in establishing a function-by-function analysis of her mental capabilities for Social Security purposes which would have been particularly helpful in this case considering that her treatment is surrounded by alcohol and drug abuse with mandated counseling sought only for a 6-week period as a part of custodial issues involving her child (Exhibit 11F at 7, 21)." (*Id.*)

The ALJ concluded that Dr. MacNealy's opinions in the April 2024 form were "only somewhat persuasive." (Decision, Doc. No. 7-2 at PageID 37.) The ALJ acknowledged that "[i]n light of her mental health diagnoses, it is plausible to conclude that [Plaintiff] does exhibit some functional difficulties particularly related to mood variance for which mental health services have been recommended (Exhibit 11F at 45)." (*Id.* at PageID 36.) However, the ALJ reasoned that Plaintiff had not required psychiatric hospitalization and that "her [two emergency room] visits were the result of short-term symptom exacerbation associated with psychosocial stressors and lack of dedicated mental health treatment by her own acknowledgement." (*Id.*) The ALJ noted that Plaintiff's treatment otherwise "remained conservative on a routine outpatient basis." (*Id.*) The ALJ further explained:

7

> Hence, a fair reading of the record does not demonstrate that Dr. MacNealy's findings are indicative of [Plaintiff's] ordinary level of psychological functioning. Her ability to maintain attention and concentration, relate to others in an appropriate manner, cope with work stress, and adapt to change inherent with multistep tasks are limited to no more than a moderate extent when she is drug- and alcohol-free, findings which are reflected in Dr. MacNealy's own psychiatric notes during his treatment of [Plaintiff] which describe her as fully-oriented and "doing fine" and improving on psychoactive medications (Exhibit 12F at 5, 6, 15, 21, 45, 51) and other mental status findings also showing her as alert and fully-oriented with normal mood and behavior, normal thought content, fair to normal insight/judgment, and logical thought processes (Exhibits 5F / 7F / 8F / 11F / 12F). These findings are discussed in further detail below, but as Dr. MacNealy's opinion evidence is not entirely consistent with the balance of record his assessment can be considered only somewhat persuasive.

(*Id.* at PageID 36-37.)

### C. The ALJ's Symptom Severity Analysis

The ALJ summarized Plaintiff's symptoms, subjective complaints, and reports of difficulty with daily activities, including her testimony during the April 2024 hearing. (Decision, Doc. No. 7-2 at PageID 34-39.) The ALJ also summarized the medical records and acknowledged the subjective complaints and daily activities that Plaintiff reported to her medical providers. (*Id.* at PageID 35-39.) Additionally, the ALJ described the medical opinions and prior administrative findings in the record. (*Id.* at PageID 36-37.) The ALJ explained his inclusion of certain mental limitations in the RFC:

> However, [Plaintiff's] capacity to work is reduced by the effects of her "severe" mental impairments. As discussed at Finding No. 3, [Plaintiff] experiences a moderate limitation in her ability to understand, remember, or apply information; a moderate limitation in her ability to interact with others; a moderate limitation in her ability to concentrate, persist, or maintain pace; and a moderate limitation in her ability to adapt or manage oneself. This level of psychological limitation translates to the following specific functional restrictions: The [sic] can only perform simple, routine

tasks in a work environment free of a production rate pace and without strict performance quotas as symptoms are likely to hinder [Plaintiff's] ability to attend to complex/detailed work for long periods. [Plaintiff] can tolerate only occasional changes to a routine work setting defined as 1-2 per week to account for the possibility that stress may exacerbate symptoms. [Plaintiff] also requires an occupation with occasional superficial contact with coworkers and supervisors with no teamwork or tandem tasks. Job duties should not involve interaction with the general public. These restrictions have been imposed to accommodate [Plaintiff's] social isolation complaints and reduce the possibility of any social functioning difficulties during bouts of symptom exacerbation.

(Decision, Doc. No. 7-2 at PageID 41.)

Next, the ALJ described the applicable legal standard and concluded that that although Plaintiff's impairments could reasonably be expected to cause her symptoms, the "extent of limitation alleged, e.g., depression so severe it interferes with relationships, household activities, sleep, and work (Exhibit 1F at 18), is largely unsubstantiated by convincing objective medical evidence or clinical findings." (Decision, Doc. No. 6-2 at PageID 43.) The ALJ reasoned:

Though her fairly sporadic efforts at mental health treatment cannot be overlooked, [Plaintiff] does have some elements of a bipolar disorder and suffers from PTSD and emotional dysregulation. Nevertheless, there is no evidence which would suggest that [Plaintiff] is pathologically unable to behave according to socially acceptable standards or has debilitating psychological symptoms that would compromise her ability to maintain a dependable work schedule. Her anxiety and depressive-based symptoms actually seem of no more than moderate severity and positively respond to consistent medication management as discussed herein. [Plaintiff] does also have some concentration lapses and deficits in stress tolerance but these too have been fully accommodated by the above mental limitations. [Plaintiff] has not presented objective medical evidence or clinical findings to establish a medically determinable impairment that would result in any greater degree of limitation, and thus, allegations of disability are not persuasive.

(*Id.*)

9

## IV.    LAW AND ANALYSIS

Plaintiff asserts two assignments of error. (SE, Doc. No. 8 at PageID 962.) First, Plaintiff contends that the ALJ's non-disability determination is unsupported by substantial evidence because the ALJ "failed to fully and fairly develop the record and his RFC assessment is unsupported by any creditable medical opinion evidence whatsoever." (*Id.*) Second, Plaintiff asserts: "The ALJ's consideration of [Plaintiff's] symptoms is unreasonable, unsupported, and inconsistent with the demands of SSR 16-3p." (*Id.*) For the reasons discussed below, the Court concludes that Plaintiff's assertions are not well-taken and therefore affirms the ALJ's decision.

### A.    The ALJ Was Not Required To Develop The Record To Obtain Medical Opinion Evidence That Supports The RFC.

It is well-established that determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'"). A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence,

10

evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion evidence when determining the RFC, but he is not required to adopt them or adopt any such findings verbatim. *Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). In addition, "[t]he determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

Here, the Court finds that the ALJ appropriately considered and relied upon the medical opinions, objective medical evidence and non-medical evidence in the record to determine the RFC. The ALJ addressed the supportability and consistency factors as required by 20 C.F.R. § 404.1520c and provided good reasons—supported by substantial evidence—for discounting the opinions of treating psychiatrist Dr. MacNealy. Likewise, the ALJ provided good reasons for concluding that the range of work set forth in the RFC accounted for the balance of the evidence in the record. Moreover, the ALJ did not "improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*,

11

391 F. App'x. 435, 439 (6th Cir. 2010). The ALJ's conclusions are supported by substantial evidence, and the applicable legal framework did not require him to do more.

Plaintiff disagrees, arguing that "no medical opinions provide any modicum of support for the ALJ's findings regarding [Plaintiff's] psychiatric impairments, her symptoms, or their functional effects." (SE, Doc. No. 8 at PageID 967.) Plaintiff points out that the state agency psychological consultants found insufficient evidence to assess the allegations (*id.* (citing AR, Doc. No. 7-3 at PageID 97, 103, 110)) and treating psychiatrist Dr. MacNealy found marked impairment in most areas of work-related mental functioning. (*Id.* at PageID 968 (citing AR, Doc. No. 7-8 at PageID 952-61).) Plaintiff argues that "remand is appropriate where the 'ALJ makes a finding of work-related limitations based on no medical source opinion, or an outdated source opinion that did not include consideration of a critical body of objective medical evidence." (SE, Doc. No. 8 at PageID 966-67 (quoting *Anita Lynn H.-J. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-025, 2022 WL 10686665, at *3 (S.D. Ohio June 23, 2022) (Silvain, M.J.)[3] (quoting *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866, at *1-3 (N.D. Ohio Oct. 21, 2011)).) Plaintiff further argues that ALJs must develop the record in these circumstances unless "the evidence involves 'relatively little physical impairment' such that the ALJ can render 'a commonsense judgment about functional capacity.'" (*Id.* (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008).) Relying on this case law, Plaintiff contends that "the absence of any foundation in

---

[3] Plaintiff incorrectly cited this case as "*Jones v. Commissioner*, Case No. 3:21-cv-25 at *5 (S.D. Ohio June 23, 2022) (Silvain, M.J.)." (SE, Doc. No. 8 at PageID 966-67.)

12

creditable medical opinion evidence for the ALJ's non-disability finding denotes a lack of substantial evidentiary support for his conclusions." (*Id*. at PageID 969-70.)

In response, Defendant notes that the ALJ considered a record that "consisted of roughly 500 pages of medical records over a five-year time span … recent hearing testimony from Plaintiff and a vocational expert … medical opinions and other statements from Plaintiff's psychiatrist about her functioning," and evidence about Plaintiff's various activities. (MIO, Doc. No. 10 at PageID 984.) Defendant also points out that during the hearing, "Plaintiff (through her attorney) had no objection to the evidentiary exhibits before the ALJ and denied the need for other records …." (*Id*.) Defendant cites regulations that provide ALJs with the discretion to decide whether and how to develop the record. (*Id*. at PageID 985 (citing 20 C.F.R. § 404.1520b).)[4] Defendant also cites Sixth Circuit cases that have not required ALJs to cite or obtain medical opinions that support their RFC formulations. (*Id*. at PageID 985-87 (citing *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018); *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)). Finally, Defendant argues that the line of authority cited by Plaintiff, including *Deskin*, has "been criticized by nearly two dozen cases, including by this Court." (*Id*. at PageID 987 (quoting *Lawson v. Comm'r of*

---

[4] *See, e.g.,* 20 C.F.R. §§ 404.1520b(a) ("If all of the evidence we receive … is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence.") and 404.1520b(b)(2) ("If the evidence is consistent but we have insufficient evidence to determine whether you are disabled … we will determine the best way to resolve the inconsistency or insufficiency" which may include development of the record).

13

*Soc. Sec.*, No. 1:20-cv-324, 2021 WL 2659176, at *9 (S.D. Ohio June 29, 2021), *report and recommendation adopted*, 2021 WL 36636349 (S.D. Ohio Aug. 18, 2021)).

The Court agrees with Defendant on this issue. The applicable regulations assign the duty of formulating the RFC to the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'"). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5). None of these regulations require the ALJ to find that a medical opinion, as opposed to other evidence in the record, supports each component and limitation of the RFC. This Court therefore declines to impose such a requirement. *See Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558 (6th Cir. 2022) ("[G]oing forward, we would be wise not to upset the Social Security Administration's carefully crafted procedures with judge-made standards") (Readler, J. concurring op.).

**B.      The ALJ Did Not Err In His Analysis Of Plaintiff's Symptom Severity.**

The ALJ's evaluation of Plaintiff's symptoms was governed by a detailed Social Security regulation (20 C.F.R. § 404.1529) and SSR 16-3p, which mandates a two-step

process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3

(S.S.A. revised and republished Oct. 25, 2017).[5]

At the first step, the ALJ must "determine whether the individual has a medically

determinable impairment that could reasonably be expected to produce the individual's

alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon

objective medical evidence in the form of medical signs or laboratory findings. *Id*.

Medical signs are "anatomical, physiological, or psychological abnormalities established

by medically acceptable clinical diagnostic techniques that can be observed apart from an

individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective

medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an

individual's symptoms . . . and determine the extent to which an individual's symptoms

limit his or her ability to perform work-related activities." SSR 16-3p at *9. Among other

things, the ALJ must decide whether the alleged symptoms and accompanying limitations

are consistent with the evidence in the record. SSR 16-3p at *8. The Social Security

Administration "recognize[s] that some individuals may experience symptoms differently

and may be limited by symptoms to a greater or lesser extent than other individuals with

the same medical impairments, the same objective medical evidence, and the same non-

medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including

the objective medical evidence; an individual's statements about the intensity,

---

[5] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *9. Further, when determining whether an individual's statements are consistent with her symptoms, the ALJ will keep in mind that the individual's statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8. The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual

16

and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

Plaintiff asserts that the ALJ erred when he evaluated Plaintiff's symptom severity and that his analysis is unsupported by the record. Plaintiff's one-paragraph argument in the Statement of Errors is vague and does not identify any specific flaw in the ALJ's analysis. (Doc. No. 8 at PageID 974.) In its Memorandum in Opposition, Defendant contends that the Court should reject Plaintiff's argument as perfunctory and therefore waived. (Doc. No. 10 at PageID 988.) In her Reply, Plaintiff describes the basis for this assignment of error in much greater detail. (Doc. No. 11 at PageID 992-96.)

It is well-established that issues raised for the first time in a reply brief are deemed to be waived. *E.g., Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008). One reason for this rule is because the purpose of a reply brief is, as the name suggests, to reply to the opposing party's arguments, rather than to raise new arguments. *Id.* (citing *Novosteel Sa v. U.S.*, 284 F.3d 1261 (Fed. Cir. 2002).) Another reason for this rule is that parties typically are not permitted to respond to reply briefs, and it is unfair to allow the moving party to make a new argument in the reply brief that cannot be opposed. *Id.* The Court sees no reason not to apply this longstanding rule in this case.

Moreover, even if the Court were to consider the merits of Plaintiff's arguments, it would reject them. Plaintiff first argues that "the ALJ reversibly erred by selectively focusing on Strong's improvement during treatment and … conflating her alleged improvement with an ability to perform full-time work activity on a sustained basis." (Reply, Doc. No. 11 at PageID 994.) Plaintiff contends that "the nature of mental health

impairments is fluctuating, and any improvement experienced by Plaintiff may have been fleeting." (*Id.* at PageID 995.) Plaintiff further contends that any reports of improvement must be interpreted "with an understanding of [her] overall well-being and the nature of her symptoms," as well as with "an awareness that improved functioning while being treated and while limiting environmental stressors does not mean that a claimant can function effectively in a workplace." (*Id.* at PageID 995.)

These arguments are unpersuasive because the ALJ complied with the two-step process required by 20 C.F.R. § 404.1529 and SSR 16-3p. The ALJ first summarized Plaintiff's subjective complaints related to her mental impairments. The ALJ noted that Plaintiff complained of symptoms such as sleep and appetite changes, low mood, fatigue/low energy, irritability, racing thoughts, difficulty concentrating, lack of motivation, diminished interest, mood swings/mania, isolation/withdrawal, impulsivity, excessive involvement in activities that have a high potential for painful consequences, and PTSD from an abusive relationship. (Decision, Doc. No. 7-2 at PageID 35, 37-38.)

Next, the ALJ discussed the medical records that documented Plaintiff's treatment for her mental impairments. (Decision, Doc. No. 7-2 at PageID 35-39.) The ALJ acknowledged that Plaintiff was treated in an emergency room for complaints of increased depression and suicidal ideation on two occasions in 2021. (*Id.* at PageID 35.) However, he noted Plaintiff was not admitted for inpatient treatment and found that the visits "were the result of short-term symptom exacerbation associated with psychosocial stressors and lack of dedicated mental health treatment by her own acknowledgement." (*Id.* at PageID 35-36.) The ALJ explained that aside from those two emergency room

18

visits, Plaintiff's treatment "remained conservative on a routine outpatient basis." (*Id.* at PageID 36.)

The ALJ acknowledged many of the abnormal findings that providers documented in the treatment notes, including "some cycling of depressed mood and anxiety largely due to situational stressors particularly [Plaintiff's] poor access to treatment, marital and family issues, concerns about custody of her son, financial constraints, and unstable housing (Exhibits 2F at 10 / 3F at 14 / 5F at 2 / 11F at 31, 35, 37, 45, 73-74, 89 / 16E)." (Decision, Doc. No. 7-2 at PageID 36.) The ALJ also acknowledged many abnormal mental status findings in his discussion of the four "Paragraph B" areas of functioning. (*Id.* at PageID 37-38.) For example, the ALJ cited examinations that showed increased anxiety, agitation, crying, and tearfulness. (*Id.* at PageID 38.) The ALJ also cited some providers' observations of concentration deficits such as "exhibiting rapid and tangential speech while appearing easily distractible (Exhibit 11F at 31, 45, 51, 64)." (*Id.* at PageID 38 (citing AR, Doc. No. 7-7 at PageID 828, 842, 848, 861).)

The ALJ compared this evidence to relatively normal findings in the treatment notes, such as logical thought processes, clear speech and language, intact recent and remote memory, average intellect, clear speech, fleeting to average eye contact, intact attention span and concentration, an alert presentation, full orientation, good hygiene, normal thought content, and normal insight and judgment. (Decision, Doc. No. 7-2 at PageID 37 (citing, *e.g.,* AR, Doc. No. 7-7 at PageID 411-58, 478, 729-45, 747-60, 798-894; AR, Doc. No. 7-8 at PageID 897-951.) The ALJ noted that some progress notes showed that Plaintiff's mood improved "with a corresponding reduction in stressors, e.g.,

regular visits with son, reduced marital discord, and improved finances (Exhibit 11F at 84)." (*Id.* at PageID 36 (citing AR, Doc. No. 7-7 at PageID 881).) The ALJ also cited several records that showed that Plaintiff's treatment improved her symptoms and stabilized her mood. (*Id.* (citing AR, Doc. No. 7-7 at PageID 543-44, 589, 594, 603, 608; AR, Doc. No. 7-8 at PageID 940, 948, 950).) Additionally, the ALJ cited several of Plaintiff's reported daily activities and hobbies to support his conclusion that Plaintiff experiences no more than moderate impairment in the "Paragraph B" areas of functioning. (*Id.* at PageID 37-38.)

In the RFC analysis, the ALJ discounted Plaintiff's symptom severity in part because her allegations were "largely unsubstantiated by convincing objective medical evidence or clinical findings." (Decision, Doc. No. 7-2 at PageID 43.) In making this conclusion, the ALJ acknowledged that Plaintiff "does have some elements of a bipolar disorder and suffers from PTSD and emotional dysregulation," but stated that Plaintiff's "fairly sporadic efforts at mental health treatment cannot be overlooked." (*Id.*) The ALJ also stated: "Her anxiety and depressive-based symptoms actually seem of no more than moderate severity and positively respond to consistent medication management as discussed herein." (*Id.*) The ALJ acknowledged that Plaintiff had "some concentration lapses and deficits in stress tolerance" but found that the mental limitations in the RFC accommodated these issues. (*Id.*) The ALJ concluded: "[Plaintiff] has not presented objective medical evidence or clinical findings to establish a medically determinable impairment that would result in any greater degree of limitation, and thus, allegations of disability are not persuasive." (*Id.*)

Contrary to Plaintiff's argument, therefore, the ALJ did not conclude that Plaintiff could perform unrestricted full-time work because her symptoms improved as a result of mental health treatment. Rather, the ALJ found that the record supported moderate limitations in each of the four "B criteria" areas of functioning. (Decision, Doc. No. 7-2 at PageID 37-38.) The ALJ accounted for these limitations by including a number of mental restrictions in the RFC. (*Id.* at PageID 40-43.) The Court finds that the ALJ's conclusions are supported by substantial evidence and therefore must be affirmed.

Next, Plaintiff argues that the ALJ erroneously "relie[d] heavily on [Plaintiff's] ability to perform some activities of daily living, including an ability to live with a minor child, to care for pets, to receive her driver's license, and to seek mental health resources." (Reply, Doc. No. 11 at PageID 993.) Plaintiff contends that "an individual's ability to perform some basic activities of daily living are not comparable to an ability to sustain full-time employment." (*Id.* at PageID 993-94 (citing 20 C.F.R. § 404.1572(c)[6]; *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007); *Cohen v. Sec'y of Dep't of Health & Hum. Servs.*, 964 F.2d 524, 534 (6th Cir. 1992)).)

This argument is not well-taken. The ALJ accurately characterized Plaintiff's daily activities and their effects on Plaintiff's mental functioning. The ALJ did not rely solely upon Plaintiff's reported daily activities but also considered other evidence, including the mental health treatment records and Plaintiff's subjective complaints. (Decision, Doc.

---

[6] Plaintiff cites to 20 C.F.R. § 404.1527(c). (Reply, Doc. No. 11 at PageID 994.) This appears to be a typographical error, as the quoted language appears in 20 C.F.R. § 404.15**72**(c).

No. 7-2 at PageID 37-38.) The ALJ also did not equate Plaintiff's reported daily activities with an ability to perform full-time work but instead cited them to discount Plaintiff's allegations of "near total reliance on her mother for day-to-day functioning needs." (*Id.* at PageID 37.) The ALJ considered Plaintiff's daily activities as only one factor in his analysis of the "Paragraph B" areas of functioning, which is consistent with SSR 16-3p.

For all of these reasons, the Court finds that substantial evidence supports the ALJ's decision and it shall therefore be affirmed.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 8) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge